134

L. F. Pease Company Inc. ⎫
vs. ⎬ No. 85529
The Di-Hard Golf Course ⎭

Felix Sylvestre et al. ⎫
vs. ⎬ No. 85445
L. F. Pease Company, Inc. ⎭

DECISION.

February 11, 1933.

JOSLIN, J. During the year 1930, the game of outdoor miniature golf rose to considerable popularity in southern New England. Messrs. Sylvestre and Pomfret constructed a course for this game on a lot of land just beyond the Louisquisset Pike in Woonsocket. It was completed late in September, 1930, and the venture was an immediate success. The cold weather was approaching and they were considering the matter of enclosing the course when the sales representative of Pease Company called upon them. There was some conversation at this meeting and several days thereafter (October 13, 1930), said representative, together with the construction superintendent of Pease Company, called upon Sylvestre and Pomfret and submitted the following agreement, which was signed by both parties.

"Furnish canvas roof, side walls and wooden construction to enclose golf course. Price erected complete $3,000. Delivery three to four weeks.

"25% payment when job is completed, balance net 30 days from date of completion, account not to run over 90 days."

It is not disputed that said agreement required the erection of a canvas enclosed structure supported by center and side poles. By means of guy cables these poles were to be attached or fastened to anchors cemented in the ground. The structure was to be 30 feet high at its highest point. It was to be triangular in form, measuring 191 feet on the north, 220 feet on the east and 212 feet on the Park Avenue side. Work was immediately commenced and continued until December 6, 1930. On December 23rd, there was a heavy fall of snow accompanied by a gale. Due to the weight of the snow, there was a serious collapse of parts of the structure which ultimately resulted in serious damage. The structure remained without reconstruction or repair for several months, when it was entirely removed by Sylvestre and Pomfret.

Each of the parties has brought an action against the other. Both actions were tried together by the Court without a jury.

The declaration of L. F. Pease Company is in one count. It alleges that the defendants in that case, by written agreement, ordered the plaintiff to furnish a canvas roof, side walls and wooden construction to enclose the golf course, for the sum of $3,000; that it did furnish the same to the defendants and that the defendants have refused to pay the amount agreed upon.

The declaration of Sylvestre and Pomfret makes no mention of a written agreement. It alleges that the Pease Company, the defendant in that case, agreed to erect a certain building which would be adequate and sufficient to enclose the golf course and keep the interior reasonably and adequately protected from bad weather, and be sufficient in construction so that it could be heated with reasonable assurance that when so heated it would be comfortable for patrons; that the canvas would be strong with sufficient and proper interior wooden construction so as to properly support the roof and walls; and that the building would be of sufficient strength so as to withstand destruction by the elements; that the defendant breached the agreement in that the building was improperly and inadequately erected; that the

building was demolished by storms; that it was not completed; and that they were damaged thereby.

The agreement being ambiguous upon its face and the meaning of the language therein being in doubt and susceptible of more than one construction, the Court admitted evidence of the surrounding facts and circumstances as they existed when the agreement was made, as well as evidence of the conduct of the parties during construction, to aid in the determination of the meaning of the words as used and the intention of the parties. This opened up the negotiations leading to the signing of the agreement. No fraud was claimed.

If the agreement was substantially performed by Pease Company, it follows that it is entitled to a verdict in its favor in both cases. Sylvestre and Pomfret maintain that there was not such a performance in the following respects:

*First*: They contend that the agreement virtually gave them a guaranty of certain results, all of which are detailed in their declaration. It will serve no useful purpose to discuss these, as there is no credible testimony to predicate a finding in favor of the agreement containing any guaranty of results.

*Secondly*: They maintain that it was definitely understood before and at the time the agreement was signed that the Pease Company would so pitch the roof and so paraffin the canvas that snow would not stick to it but would slide off before accumulating. This phase of the case is most important as it apparently is agreed by both parties that one, if not the sole, cause of the collapse of the structure on December 24th, was the accumulation of snow during the storm of that date. At any rate, we find from the evidence that said accumulation of snow, and no other agency, was the cause of the said collapse.

Sylvestre and Pomfret had a talk with Mr. Dunton, the former sales representative of Pease Company, several days prior to October 13th, the date of signing the agreement. They testified that they agreed in detail as to the character of the structure they desired and the purposes for which it was to be used. Among other things, they say they obtained the promise that the canvas roof would be so erected and treated that snow would in and of itself and of its own motion slide off. They further testified that on October 13th, Guy R. Huntley, construction superintendent of Pease Company, came to them, presented the contract in question and asked for their signatures "to show good faith." On this occasion they say that they were told by Huntley that the roof would be built in such a way that "snow will not stay."

Sylvestre has been in business for 13 years as the owner of a diner. Pomfret is general manager of several branches of a loan company and is a man of more than ordinary intelligence and ability. They were corroborated generally in their statement by their employee O'Keefe and also by Dunton, the discharged sales representative of Pease Company, who had signed as a witness to the contract. Dunton was brought here for the trial by Sylvestre and Pomfret from Camden, New Jersey. He testified that Huntley said: "Due to the pitch of the roof and the treatment of the canvas with paraffin, that snow would slide off it." This was denied by Pease Company witnesses. Counsel for Sylvestre and Pomfret argue that on this point all the witnesses except Dunton were interested. To the Court, Dunton did not appear to be disinterested.

Sylvestre and Pomfret call this a building; Pease Company insist it is a tent, claiming it has all the essential elements of a tent; namely, canvas, poles, cordage—and no more. For the

purposes of this case the Court is treating it as a structure.

It is inconceivable that either Dunton or Huntley would have made the claim in respect to snow that is contended for by Sylvestre and Pomfret. It is likewise highly improbable that Sylvestre and Pomfret, particularly the latter, would have believed that a canvas roof could be so erected that snow would fall off or slide off of its own motion. Paraffining the canvas is a process to make it waterproof. The structure was erected to and did withstand rain and wind, but it was not designed nor intended to withstand snow upon its roof. There was evidence, which we believe to be true, that Sylvestre and Pomfret were told during the erection that they would have to take care of snow when it came. Had Sylvestre and Pomfret given the roof proper care and maintenance, the structure would not have collapsed. Such care and maintenance would include heating the interior with the contemplated elaborate heating equipment and removing the snow from the roof before it accumulated in any considerable quantity. Practical methods of doing this were testified to.

There is nothing in the written agreement and the Court finds from the evidence that the parties did not intend that Pease Company should be re-required to construct the canvas roof so that the snow would not adhere to it and would slide off before accumulating.

*Finally,* Sylvestre and Pomfret argue that the structure was not completed and, in any event, was not built substantially as agreed upon.

There was a storm on November 30th. The structure was not then completed and had not yet been delivered to Sylvestre and Pomfret. Some damage was done but it was speedily repaired. The building inspector of the City of Woonsocket came to the premises. Among other things,

the building inspector testified that he made certain recommendations, principally that Huntley reinforce the poles and extend the guy cables from the eaves to the anchors at a different angle. The Court is satisfied that all the recommendations made by the building inspector, which were reasonably necessary, were complied with. In fact, the building inspector admitted that at his suggestion "Nick" was engaged by Pease Company to do the work. To change the angle of the guy cables would have been improper. The building inspector admitted his inexperience with tent construction.

The building inspector states that he condemned the building. The Pease Company did not admit that they were subject to the order of the building inspector or that they were required to obtain a permit for their work, claiming that the structure was a tent for which a permit was not required. In view of the conclusion to which the Court has come, it is unnecessary to decide this point, but the Court is of the opinion that the building inspector had the right to enter this structure, examine it, and if he considered it unsafe to cause it to be made safe, or take any other action deemed necessary for the public safety.

Sections 11 and 211 of the Revised Ordinances of the City of Woonsocket provide for the appointment of a building inspector and define his duties and powers. Among these are that he shall make an examination of all buildings reported dangerous from any cause and "shall make a record of such examination * * * and shall make a record of the condition of the same."

The building inspector admitted that his office makes records of all condemnations. It is significant that he made no record of this one. He sent no notice thereof either to the owners or to Pease Company. He admitted that he made no mention of condemnation to the foreman on the premises.

At times, he seemed hazy about the whole matter in respect to which he was testifying and it appeared to the Court that he was laboring in an effort to aid his fellow townsmen. The Court is of the opinion, and so finds from the evidence, that the building inspector did not condemn this structure prior to December 6th. He did go there, probably on two occasions, and advised as to several matters, but that was the extent of his interest.

Sylvestre and Pomfret complain vaguely, and more or less generally, that the canvas, poles, guy cables, anchors, and perhaps other of the materials, were inadequate and improper. There is also a suggestion attacking the quality of the workmanship. The evidence does not substantiate these charges. In addition to the testimony of Pease Company employees, the testimony of the expert witnesses, Milo Young and George W. Huntley, leaves no room for doubt that the proper materials and workmanship were employed.

The Court finds from the evidence that the requirements of the agreement as to materials and workmanship have been substantially complied with by Pease Company, that it performed its part of the agreement in proper and workmanlike manner, and that the structure was delivered to and accepted by Sylvestre and Pomfret on or about December 6th. On that date Lacey and Armour of the Pease Company went over the job with O'Keefe and Pomfret and thereafter both O'Keefe and Pomfret made the statement that everything was all right so far as they could see. Pease Company withdrew from the structure and never returned. The collapse of the structure occurred on December 23rd or 24th. This was due to the failure of Sylvestre and Pomfret to give it reasonably proper care and maintenance during and following the snow storm. For this, Pease Company cannot be held at fault.

For the foregoing reasons, in the case of *L. F. Pease Company, Inc.* vs. *The Di-Hard Golf Course*, the Court gives decision for the plaintiff in the sum of $3,360, the full amount claimed plus interest. In the case of *Felix Sylvestre et al.* vs. *L. F. Pease Company, Inc.*, the Court gives decision for the defendant.

Attorney for L. F. Pease Company: Fergus J. McOsker, Esq.

Attorney for The Di-Hard Golf Course & Felix Sylvestre et al: John R. Higgins, Esq.